IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN BRADLEY, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:21-CV-40 |
| v. | |
| THE GROVE AT NEW WILIMINGTON, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A. *Preliminary Statement*

1. The plaintiff Susan Bradley brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of her right to be free from employment discrimination and retaliation based upon her disability. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. A jury trial is demanded.

B. *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about June 19, 2020, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 553-2020-01610. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated December 17, 2020.

5. The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C. **_The parties_**

6. The plaintiff Susan Bradley is an adult individual who resides at 121 Park Ave., New Castle, Lawrence County, PA 16101.

7. The defendant The Grove at New Wilmington ("The Grove" or "the company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant has a principal place of business located at 520 S. New Castle Street, New Wilmington, Lawrence County, PA 16142.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D. **_Factual Background_**

10. The plaintiff worked for The Grove as Director of Nursing from March 30, 2019 until March 27, 2020, at which time her employment was terminated.

11. The Grove is a nursing home and rehabilitation facility.

12. The plaintiff's duties included: managing staff, taking care of residents and their families and dealing with various state agencies.

13. During her employment, The Grove's management considered the plaintiff to be a good and productive employee who consistently met or exceeded expectations. Further, the plaintiff was never "written up" or subjected to any verbal or written discipline regarding the performance of her job throughout the course of her employment.

14. The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability. Specifically, she has heart disease, a physical and/or mental impairment that substantially limits one or more of the major life activities of the plaintiff.

15. In December 2019 through early January 2020, the plaintiff was instrumental in The Grove's efforts to pass the annual Pennsylvania Department of Health survey. She worked on the Plan of Corrections provided by the agency and addressed the deficiencies identified therein and made all the information requested by the agency available. The agency's investigator, Doug [last name unknown] told The Grove's management that the plaintiff was knowledgeable, organized and very responsive. Specifically, Doug told Lisa Marshall, Regional Manager, that the plaintiff went "above and beyond" and that The Grove would not have passed without the plaintiff's efforts.

16. On January 23, 2020, the plaintiff suffered a heart attack while at home. She was taken to the hospital and underwent a catheterization and had a stent placed. The procedure was successful and she was discharged from the hospital on the next day.

17. On January 24, 2020, the plaintiff notified Cinnamon Meese, Human Resources, Lloyd Berkey, Administrator, and Marshall about what had happened. She also advised them that she would have to take leave for a period of time to recover but that she would be back to work as soon as possible. During this time, Marshall and Berkey seemed supportive, telling her that they "missed her", wanted her to "get better" and to "hurry back" to work.

18. Sometime in February 2020, Berkey called the plaintiff and asked her to bring him her laptop computer that she had at home. The plaintiff contacted Marshall and asked if

there was a problem and was assured that there was no issue with her continued employment, that her laptop was needed for morning meetings.

19.     On March 4, 2020 – just six weeks after she had her heart attack – the plaintiff returned to work pursuant and provided Meese with her doctor's note allowing her to do so. Meese told the plaintiff that the note was vague and asked the plaintiff if there were any limitations on her work duties and whether she was returning full time.  The plaintiff said that she would get a more detailed note from her doctor and also advised her that she had to go to cardiac rehabilitation three times a week (Mondays, Tuesdays and Thursdays) and could work from 6:00 am to 2:30 pm on those days (her rehabilitation sessions were scheduled for 3:00 pm to 4:00 pm).

20.     The plaintiff's physician provided another note on March 10, 2020 restricting her from working longer than 8 hours in a shift and not more than 5 consecutive days per week. These requested accommodations were reasonable:  the plaintiff was still able to work 40 hours in any given week and it was understood that these were not "permanent" restrictions, but rather would be lifted after the plaintiff had fully recovered.

21.     The plaintiff provided the note to Meese the same day that she got it from her physician.

22.     Berkey got upset every time that the plaintiff left to go to rehabilitation, often throwing up his hands, rolling his eyes and expressing frustration when the plaintiff advised him that she was leaving for the afternoon.

23.     The plaintiff told Meese about Berkey's treatment of her and she said that she would talk to him about it, but his behavior towards her did not change; in fact, it continued to

get worse. The plaintiff talked to Meese more than once about this problem, and Meese's response was always the same.

24. Berkey never talked to the plaintiff about her doctor's restrictions, but, as detailed above, he was always angry and irritated each time that the plaintiff told him that she was leaving for the day.

25. The plaintiff started to get concerned about Berkey's negative treatment of her since the heart attack and asked Meese at one point if she could take FMLA time to help facilitate her transition to her regular schedule. Meese told her that she was not eligible for FMLA because she had not yet been working for The Grove for a full year (the plaintiff was a couple of weeks shy of her one-year anniversary).

26. On March 27, 2020, Berkey saw the plaintiff walking down the hall at work and told her that he needed to talk to her in his office. When this meeting began, Berkey, Meese and a corporate RNAC were in attendance. He started the meeting by telling the plaintiff that "I have something here for you; it's your termination". He handed the plaintiff a Corrective Action Form. The section titled "Supervisor Statement", contained the following: "Inadequate job performance related to lack of nursing leadership, lack of follow up with clinical issues, failure to show improvement in facility quality measures, failure to carry out clinical systems to prevent accidents, rehopitalizations and implement monitoring systems to prevent DOH deficiencies." The form did not contain any "action plan" to address these alleged "deficiencies" and, instead, merely stated that her termination was effective March 27, 2020.

27. The plaintiff finished reading the form and told Berkey that "all of this is nonsense, and you know it. I've always gone above and beyond in doing my work". Berkey

merely responded that "we are all in agreement" with the termination and refused to discuss anything about the plaintiff's performance.

28. The reason given for her termination was nothing more than a pretext and the real reason that she was terminated was because of her disability. None of the issues in the Corrective Action Form were ever brought to the plaintiff's attention and, contrary to what it said, the plaintiff had performed her job well and met or exceeded any expectations. This was also true of the plaintiff's work after she returned to work following her heart attack. No one – including Berkey, the plaintiff's immediate supervisor – told the plaintiff that she was in any way deficient with the performance of her job well after she returned to work in early March. The only "complaints" were Berkey's anger about the plaintiff's need to work a modified schedule until she had fully recovered. Further, the plaintiff was retaliated against for disclosing her disability and requesting a reasonable accommodation.

## **FIRST CAUSE OF ACTION**

29. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

30. The plaintiff has a disability and thus is protected against discrimination under the ADA.

31. The plaintiff was qualified for her position.

32. At all times relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

33. The plaintiff was able to perform her position with or without a reasonable accommodation.

34. Despite her qualifications, the plaintiff was terminated. The reasons given for her discharge were a pretext.

35. The defendant's discharge of the plaintiff was because of her disability, in violation of the ADA.

36. Further, the plaintiff was retaliated against for disclosing her disability, requesting a reasonable accommodation and raising issues about how her manager was treating her in response to her request for a reasonable accommodation.

37. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

38. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

39. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and the PHRA, including attorney's fees and costs.

                                    Respectfully submitted,

                                    */s/ Michael J. Bruzzese*
                                    Michael J. Bruzzese
                                    Pa. I.D. No. 63306

                                    2315 Koppers Building
                                    436 Seventh Avenue
                                    Pittsburgh, PA 15219

                                    (412) 281-8676

                                    Counsel for the plaintiff

Dated: January 11, 2021